Tison *vs.* McAfee.

ISAAC P. TISON, administrator, plaintiff in error, *vs.* WILLIAM M. McAFEE *et al.*, defendants in error.

[This case was argued at the last term of the Court, and the decision withheld.]

At the September term, 1869, of Lee Superior Court, an order was passed dismissing plaintiff's suit, because the consideration of the note sued on was a slave. At the November term, 1872, a motion was made to reinstate the case. The note sued on was dated January 3d, 1863, and due January 1st, 1864. As this motion was not made until nearly three years after the note sued on was barred by the statute of limitations, nor within three years from the time the order of dismissal complained of was passed; therefore, whether under the right granted by section 3530 of the Code, the words, " within the statute of limitations" be construed to mean three years, in analogy to the statute prescribing that period as the time within which a bill for a new trial must be brought, or to mean that period within which the plaintiff's cause of action would be barred, this motion was not made in time, and was properly overruled. (R.)

New trial. Slave debt. Judgments. Statute of limitations. Before Judge CLARK. Lee Superior Court. November Term, 1872.

For the facts of this case, see the opinions.

C. T. GOODE; W. A. HAWKINS, for plaintiff in error.

G. W. WARMICK; R. F. LYON, for defendants.

TRIPPE, Judge.

The suit of plaintiff was dismissed at the September term, 1869, of Lee Superior Court, by an order of the Court entered on the minutes, reciting that it was dismissed because the consideration of the note sued on was a slave. At November term, 1872, a motion was made to reinstate the case on the docket, and that it stand for trial. The Court overruled the motion, and on this refusal error is assigned. The motion, in effect, was to set aside the previous order of the Court granted in September, 1869, in so far as that order dismissed the suit of plaintiff. To that extent only do we consider the question as presented in the record. The note sued on was dated February 3d, 1863, and due January 1st, 1864.

It will be observed that the motion to reinstate was not made until nearly three years after the note sued on ; the cause of action was barred by the statute of limitations. Nor was it made within three years from the time the order of dismissal complained of was passed. Whether, under the right granted by section 3530 of the Code, the words, " within the statute of limitations" be construed to mean three years, in analogy to the statute prescribing that period as the time within which a bill for a new trial must be brought, or to mean that period within which the plaintiff's cause of action would be barred, this motion was not made in time.

The views I have presented in the case of *Prescott vs. Bennett et al.*, in which judgment has just been pronounced, I refer to and repeat here. In that opinion I confined the argument chiefly to stating why the seven years in which a judgment would become dormant was not applicable as a fixed, invariable time, to bar a motion to set aside, and why the principle involved in the second rule stated above, furnished, in my opinion, a more equitable and correct rule. I propose to suggest some reasons why such a rule would be more reasonable and preserve legal consistency more strictly than the one of three years, in analogy to the time for bringing a bill for a new trial. I remark, generally, as I did in *Prescott vs.*

Tison *vs.* McAfee.

*Bennett,* that that rule is clearer and more satisfactory in all its applications, by which the words of the Code, which have been cited, shall be construed to mean that the time in which the motion may be made shall be limited to that period in which the right, or the right of action growing out of the subject matter under judicial consideration, would become barred by the statute of limitations. This would be in harmony with the principle which sets up many different periods of limitation for different rights or causes of action. It would simply secure to a party, in a proper case for such a motion, the same time to assert his legal rights by the motion, which he would have to assert them in some other forum ; no rule would be departed from, no principle violated, no right claimed that did not clearly exist, and which, if it could not be set up in that mode and in that forum, could be asserted in some other mode, or in another forum. Any other rule—a rule, for instance, which would fix one procrustean standard, one absolute and fixed period for all cases—might have the virtue of absoluteness, but it would be wanting in the greater virtue of having the quality of accommodating itself to and preserving that principle which, by the wisdom of all law-givers, prescribes a different measure of limitation for some cases than is prescribed for others. If the three years which is given as a limitation to bring a bill for a new trial be taken as the standard, it is obnoxious to that objection. In the case of a suit on an unliquidated account, dismissed after more than three years of the statute had run, and in a manner which would entitle the plaintiff to the motion to set aside the order of dismissal, it would grant the same time which would be allowed in a case of dismissal of an action founded on a contract that might have ten or fifteen years to run before it was barred by the statute. Indeed, in the case of the action on the account, whether it would be barred in six months or three years, the same period of limitation as to the right to reopen litigation would be allowed. And so in cases of promissory notes, whether five months or five years would bar an action on them, the same absolute period would

apply, and the same motion could be made in one case, even though several years after the debt had been barred, as could be made in the other, where several years would have to elapse before the bar of the statute would attach. When those causes of action are considered in which the right of action is limited to twelve months, as in a case of slander, or to two years, as in certain cases of trespass, the injustice and inconsistency of such a rule are more apparent. An action for words, where it would be trebly barred, could be reopened by a mere motion, with all the privileges as to time, that a plaintiff might have upon whose right of action the statute had scarcely made an inroad. For wise purposes these distinctions have been made between different actions by the statute of limitation, and Courts should look to them in adopting a rule of construction, and in applying and observing those distinctions whenever it becomes necessary in construing such general words as those now under consideration. The rule I have suggested is free from the inconsistencies referred to, preserves in full the whole spirit of the statute of limitations, and is not obnoxious to the charge of doing violence to the ancient legal maxims approved of in all Codes, by meting out the same measure to the vigilant and the slothful.

It has been argued that the decisions of the Courts on this class of debts, by inducing such creditors to pretermit all efforts for their recovery, furnishes a ground to be considered in determining the plaintiff's right in this case. The order sought to be set aside was passed at the September term, 1869. At the December term, 1869, the question was decided by this Court as to the power of the Courts to hear and determine just such questions, and it was held that no such power existed; that under the provisions of the Constitution, by virtue of which such power was claimed, the jurisdiction was denied: 40 *Georgia*, 241. This decision would have been authority for several terms for the case to have been reinstated. But no motion was made. It is said that to have reinstated it, would, under the view then entertained of the law and the Constitution, have been of no avail to the creditor. But at

Tison *vs.* McAfee.

that time the question had been made and was pending before the Supreme Court of the United States, whether the clause in the Constitution that stood in the way of the creditor was valid, and it was decided to be void. This Court was divided in opinion on the matter. The question then is, shall a party, whose case has been dismissed, who could have reinstated it for several terms under the decisions then of force, but who does not move for several years, and until his claim is barred by the statute of limitation, as well as his right to relief in equity, shall such a party, suddenly awakened by the results of a contest in which he would not engage, nor even ask to be placed back on the record, so that he might be on the line of safety, be allowed his demand to share the fruits of victory won by the energetic and the vigilant? To state the question is to answer it. I know of no principle of law or equity which would sanction it: See Hudson *vs.* Carey, 11 S. & R., 10.

I would remark that in recovering from the errors produced by a sort of abnormal condition in which the country was thrown by a revolution, we should be careful not to commit others that might be equally as hurtful to the ancient landmarks established by the law and always enforced by the Courts. As this motion was not made within the time required by law, I am of opinion that the judgment of the Court below, overruling the same, should be affirmed.

Judgment affirmed.

McCAY, Judge, concurring.

I concur in the judgment of affirmance, but I do so on the sole ground that the plaintiff in the original suit, Tison, having failed to move at the term at which the judgment was had to set aside the order dismissing his case, or to file a bill of exceptions to the decision within thirty days after the adjournment of the Court, he is to be conclusively held to have assented to the judgment, and cannot at a subsequent term, thus escape the consequences of his own *laches.*

Tison *vs.* McAfee.

WARNER, Chief Justice, dissenting.

On the 5th day of March, 1867, the plaintiff instituted his suit against the defendants in the Superior Court of Lee county, on a promissory note for the sum of $4,000 00. The suit was pending on the docket of said Court until the 30th of September, 1860, when it was dismissed by the Court, because the consideration of the note was for slaves. The following is the judgment of the Court, dismissing the plaintiff's action: " It appearing to the Court that the consideration of the note upon which said case is founded, is slaves, which this Court has no jurisdiction to enforce, it is ordered by the Court that said case be dismissed."

At the November term, 1872, of said Court, (it being the first term after the Supreme Court of the United States had decided that the provision of the State Constitution denying jurisdiction to enforce slave debts was null and void,) the plaintiff made his motion to have said judgment, dismissing his case, set aside, and that the same be reinstated on the docket, on the ground that it had been improvidently dismissed therefrom by the Court. The motion to set aside the judgment and reinstate the case was refused, and the plaintiff excepted. The plaintiff's suit on the note was instituted prior to the adoption of the Constitution of 1868. Assuming that provision of the Constitution of 1868, which denied to the Courts of this State jurisdiction or authority to try, or give judgment on, or enforce any debt, the consideration of which was a slave or slaves, or the hire thereof, to have been a valid law, the plaintiff's case was improvidently dismissed, even under that pretended law, as was held by this Court in *Ransome vs. Grist,* 40, *Georgia Reports,* 241. The plaintiff's case was properly and legally on the docket of the Court, and the Court had no legal power or authority to dismiss it out of Court, but should have left it on the docket where it was placed in accordance with the law of the land.

But, it is said that although the Court may have acted improvidently, and without authority of law, in dismiss-

ing the plaintiff's case, he is not now entitled to make his motion to set aside the judgment of dismissal, and have his case reinstated on the docket, because he did not except to the action of the Court in the matter and have its judgment reversed; that he is now *concluded* from making his motion to set aside the judgment and have the case reinstated.

It is true, the plaintiff might have excepted to the judgment of the Court dismissing his case, and have prosecuted his writ of error to this Court, and from this Court to the Supreme Court of the United States, and have had the judgment reversed and set aside as being null and void; but the question is, was he bound to do so in order to get rid of a *void judgment?* In other words, was excepting to the judgment within thirty days the *only remedy* which the plaintiff had, according to the general principles of the law and the provisions of our Code, to have that judgment set aside, and his case reinstated?

What is a judgment? "Judgments (says Blackstone) are the sentences of *the law* pronounced by the Court upon the matter contained in the record. The judgment, though pronounced or awarded by the Judges, is not their determination or sentence, but the determination and sentence of *the law*. It is the conclusion that naturally and regularly follows from the premises of law and fact, which stands thus: Against him who hath rode over my corn, I may recover damages *by law;* but A hath rode over my corn, therefore, I shall recover damages against A :" 3, Bl. Com., 396. It necessarily follows, therefore, from this definition of a judgment, that it must be founded on some law of the land; in other words, the law of the land must authorize such a judgment to be rendered for that cause, otherwise, it is the mere arbitrary caprice of the Judge—his own judgment, and not the judgment of *the law*. If there was no law against him who rode over my corn which would authorize damages to be rendered therefor, then, a judgment against A for damages, on proof of the fact that he had rode over my corn, would be a nullity, because the Court had no power or authority of law to render such a

judgment. Where there is no law, there is no transgression. If a Judge, presiding in a Court can, of his own mere arbitrary caprice, award a judgment, without any law of the land to authorize him to do so, it would be in violation of the fundamental principles of *magna charta.*

Bacon, in speaking of the several Courts in England which exercise jurisdiction there, says : "All these are bounded and circumscribed by certain laws and stated rules, to which, in all their proceedings and *judicial determinations, they must square themselves :*" 2 Bacon's Abridgement, 625, title Courts, letter D. " A Judge ought to act conformably to *law* and not according to his discretion :" 4 Comyn's Digest, top page 731, letter I. "Every power exercised by any Court must be found in and derived from *the law of the land ;* and also be exercised in the mode and manner that law prescribes :" 6 Dane's Abridgement, 423, chapter 187, Article 17. " The question, whether a Court, or magistrate, has jurisdiction of any cause, must always be decided by comparing the authority either has, by law or usage, or both, and the power to be exercised in deciding *the cause :*" 5 Dane's Abridgement, 223, chapter 146, Article 5.

Now, the legal presumption undoubtedly is, that a Court, having jurisdiction of the person and the subject matter, proceeds according to law in pronouncing its judgment, unless the contrary appears on the face of the judgment ; but if it appears on the face of the judgment that it was rendered for a cause not authorized *by law,* and without *any law* to authorize the Court to award such a judgment for that cause, then it is void. In Rex *vs.* Gayer, (1 Burrow's Reports, 246,) there was a motion to quash the order and judgment of the Court of Sessions. Lord Mansfield said : "If they had given no reasons, their order had undoubtedly been good ; we must have presumed that they acted on proper grounds ; but it is true that where the whole reason is set out, and is clearly wrong, we may, and ought to quash an order manifestly made by mistake, upon an erroneous foundation.

Now let us apply these general principles of the law before

Tison *vs.* McAfee.

cited, to the case before us. It appears on the face of the judgment, dismissing the plaintiff's case out of Court, that it was done on the sole ground that the consideration of the note upon which the suit was founded was slaves.

Suppose the Court had dismissed the plaintiff's case on the ground that he was a bald-headed man, or on the ground that he was a club-footed man, or on the ground that the consideration of the note was gold coin, and all or either of the grounds had appeared on the face of the judgment, as the cause for its dismissal, will any one pretend that there was any *law of the land* that would have authorized the Court to have awarded such a judgment? Would such a judgment have been the sentence of any law of the land? Would it not have been the mere arbitrary caprice of the Judge who uttered that judgment without authority of any law—mere *brutum fulmen?* The Court had the same legal power and authority to dismiss the plaintiff's case on the ground that the consideration of the note was slaves, as it would have had to dismiss it on either of the grounds above stated, and *no more.* There is no law of the land to authorize any Court to award such a judgment for any such cause as is apparent on the face of this judgment; it carries its *death wound* on its face. The general principles of the law applicable to the judgmnt now before us, were discussed and recognized in the case of Griffith *vs.* Frazier, 8 Cranch's Reports, 9. The question in that case, was whether the judgment of a Court, having jurisdiction of the subject matter and upon the facts before it, had the *authority of law* to render the judgment which it did. It was contended that the judgment, having been rendered by a Court of competent jurisdiction having cognizance of the subject matter and not being appealed from, was conclusive until reversed; that the judgment was merely erroneous and voidable, but not void. Chief Justice MARSHALL, in delivering the opinion of the Court, said: "This argument has been very strongly urged, and there is great force in it. The difficulty of distinguishing those cases of administration in which a Court having general testamentary jurisdiction may be said to

have acted on a subject *not within its cognizance*, is perceived and felt, but the difficulty of marking the precise line of distinction, does not prove that no such line exists. To give the Ordinary jurisdiction, a case in which, *by law*, letters of administration may issue, must be brought before him. Suppose administration to be granted on the estate of a person not really dead, the act, all will admit, is totally void; yet, the decision of the Ordinary that the person on whose estate he acts *is dead*, if the fact be otherwise, does not invest the person whom he may appoint with the character or power of an administrator. The case, in truth, was not one *within his jurisdiction*. It was not one in which he had a right to deliberate. It was not committed to him by the law. And, although one of the points occurs in all cases proper for his tribunal, yet, that point cannot bring *the subject* within his jurisdiction." In that case, the Court held the judgment void. Whenever it appears on the face of the record and judgment, that it was rendered for an alleged cause of action or subject matter, without authority of any law to authorize or support it, the judgment may be arrested or set aside, on motion, as provided by the Code. The 3529th section declares: "When a judgment has been rendered, either party may move in arrest thereof, or to set it aside for any defect not amendable, which appears on the face of the record or pleadings."

The plaintiff might have moved in arrest of this judgment at the time it was rendered, for the simple reason that there was *no law* to authorize such a judgment to have been rendered for *the cause* apparent on the face of it. The judgment could not have been amended for the same reason. A motion to set aside a judgment may be made at any time within the statute of limitations: Code, 3530. If this motion to set aside the judgment was made in time, there is no *laches* imputable to the plaintiff. If the pleadings are so defective that no legal judgment can be rendered, the judgment will be arrested or set aside: Code, 3531. The only pleadings in this case is the judgment itself, and it appears on the face

thereof that it was rendered for a cause unknown to *the law*, and without authority of *any law* to make it a legal judgment. There is no legal foundation for its support, it has no legal validity whatever, and should have been set aside on the motion of the plaintiff in the Court below. The judgment of a Court having no jurisdiction of the person *and subject matter* or *void for any other cause*, is a mere nullity, and may be so held in any Court when it becomes material to the interest of the parties to consider it: Code, 3536. This judgment of dismissal for the cause apparent on the face of it, was without the authority of any law of the land, and for the reasons hereinbefore stated, was a mere nullity. It was not an irregular or erroneous judgment, but a void judgment, and the plaintiff should have been allowed to have had his case reinstated on the docket, where, by law, he was entitled to have it. This judgment, as appears on the face of it, was a mere *usurpation* of power by the Court without any authority of law, and may be declared a nullity collaterally without any direct proceeding to reverse it; it was rendered for a cause of which the Court did not have cognizance by any law of the land. The Court had no more *lawful* power or jurisdiction to dismiss the plaintiff's case for *the cause* apparent on the face of the judgment than it would have had to dismiss it because the plaintiff was a member of the Methodist Church, or because he was a member of some other church.

If the judgment of dismissal stood in the plaintiff's way, as the Court below held it did, he was entitled to have had that judgment set aside under the provisions of the Code, although he did not except to it when it was rendered; he was not bound to except to a void judgment to get it out of his way, but might so consider it and so treat it whenever it became material to his interest to do so. This is not a case in which the Court erroneously construed a valid law, or erroneously misapplied a valid law to the facts of the case by its judgment, but it is a case in which the Court awarded a judgment for a cause wholly unknown to the law of the land, and

without any law to authorize such a judgment to be rendered by any Court, as is apparent on the face of it. If a plaintiff had brought an action of slander against a defendant in the Superior Court, and had alleged that the defendant had damaged him in the sum of $500 00, in publicly charging him with being "an honest man," and a verdict found for the plaintiff, and judgment rendered by the Court thereon, and not excepted to, will it be pretended that such a judgment could not be set aside under the provisions of the Code? Would the Superior Court have had any legal power or jurisdiction, under the law of the land, to have pronounced such a judgment for such a *cause of action?* Would such a judgment, rendered without authority of any law to authorize it, apparent on the face of the record, be binding upon anybody? It would not have been the sentence of the law, for there is no law to authorize the Court to have pronounced such a judgment on the facts set forth in the record, and therefore the judgment would have been simply void for the want of lawful authority to render it for that cause of action.

In order to maintain the validity of the judgment of dismissal now before us, it must necessarily be assumed that the Court below had jurisdiction and authority under *the law of the land* to render it for *the cause* apparent on the face of it; *that assumption* I deny, and maintain the contrary thereof, both upon principle and authority.

As was said by Chief Justice MARSHALL, in Griffith *vs.* Frazier, before cited, the difficulty of distinguishing those cases of administration in which a Court having general jurisdiction may be said to have acted on a subject not within its cognizance, and marking the precise line of distinction, does not prove that no such line exists. This principle of law, as applicable to a judgment, was distinctly recognized and practically enforced by this Court, in the case of *Pierce et al., vs. Pattishall,* decided at the last January term, not yet reported. The true line of distinction, in my judgment, is, that the judgment of a Court of general jurisdiction will always be presumed to have been rendered in accordance with the law

of the land until excepted to and reversed or set aside ; but whenever it *specially* appears on the face of the judgment that it was rendered for a cause, or on a state of facts not authorized by law, and without any law of the land to authorize the Court, as its organ, to pronounce such a judgment, it is simply a nullity, for the reason that it is apparent that the Court acted on a subject matter not within its lawful *cognizance;* in truth, the subject matter on which the Court acted was not within its lawful jurisdiction, as appears on the face of the judgment ; it was a subject matter which the Court had no lawful right to consider and deliberate upon and pronounce a judgment, inasmuch as that subject matter had never been committed to the Court by any law of the land for its consideration and judgment, and this was the ruling of the Court in Griffith *vs.* Frazier, and of this Court in Pierce *vs.* Pattishall. It does not follow that because the Superior Court is a Court of general jurisdiction as to the subject matters conferred on it by the law of the land, that it has jurisdiction over any other subject matter not conferred on it by any law of the land. It has no jurisdiction conferred on it by law to consider and adjudge that a bald-headed man's case shall be dismissed from the docket of that Court for *that cause;* neither had it jurisdiction conferred on it by law to consider and adjudge that the plaintiff's case should be dismissed because the consideration of the note sued on was for slaves. These were subject matters which the law of the land has not committed to the cognizance of that Court or any other Court, for its consideration and judgment.

The jurisdiction of Courts is created by law and cannot exist without its authority, and the sole question in this case is, whether it affirmatively appears on the face of the judgment of the Court below, that it was rendered for a cause or subject matter, not confided to its jurisdiction for consideration and judgment by any law of the land, and upon that question there can be no doubt. The Superior Courts in this State can only exercise such powers appertaining to their jurisdictions as may be granted them *by law:* Code, 236, paragraphs 1 and

5; see, also, 4th paragraph of section 3, Article 5, Constitution of 1868.

It is a fundamental principle that no man shall be despoiled or deprived of his property, but by *the law of the land.* That a great wrong has been done to the plaintiff in the dismissal of his case, for the causes apparent on the face of the judgment, must be admitted. Surely this Court should not be *anxious* to perpetuate that wrong by refusing to allow him to set aside that judgment and reinstate his case on the docket where it rightfully belongs. The plaintiff's right to make his motion to have this pretended judgment set aside, which the Court below held was in his way, was not barred by any statute of limitations at the time the motion was made. By the 3530th section of the Code, a motion may be made to set aside a judgment at any time within the statute of limitations, that is to say, at any time within which a judgment can be enforced according to the statute of limitations applicable thereto. Within what time must a judgment be enforced according to the statute of limitations applicable thereto? The 2863d section of the Code answers that question when it declares that no judgment shall be enforced after the expiration of seven years after the time of its rendition, and that applies as well to judgments rendered against a plaintiff, as to judgments rendered against a defendant. The subject matter of legislation in the 3530th section of the Code, is judgments and nothing else, and the statute of limitations mentioned therein has reference alone to judgments, and to no other subject matter; it has no reference whatever to the statute of limitations applicable to promissory notes, or to the statute of limitations applicable to bills of review, or for a new trial in a Court of equity; and there is no statute of limitations that can be made applicable to a motion to set aside a judgment but that specified in the 2863d section of the Code, unless we resort to judicial legislation, which the Constitution of the State prohibits. When the 3530th section of the Code declares that a motion to set aside a judgment may be made at any time within the statute of limitations, the true intent and

meaning thereof is that the motion to set aside the judgment may be made at any time within which a judgment can be enforced as limited by the 2863d section of the Code. The practical effect of holding that the plaintiff is barred of his right to make the motion to have this pretended judgment set aside and his case reinstated upon the docket, will be to say to him, it is true your case was wrongfully dismissed from the docket of the Superior Court where it was rightfully entered, without the authority of any law of the land, as has been decided by the highest judicial tribunal in the United States, but you shall not have any benefit from, or enjoy any of the fruits of that decision, because you are barred, and this result is accomplished by *judicial legislation,* there being no statute of limitations applicable to this judgment which bars him of his remedy to have this pretended judgment, which the Court below held was in his way, set aside, inasmuch as seven years had not expired from the date of the rendition of this pretended judgment up to the time the motion was made to set it aside. I am, therefore, of the opinion that the judgment of the Court below should be reversed.